Gkeen, J.
delivered the opinion of the court.
These are several distinct cases; but in each, the Gallatin Turnpike Company and some of its stockholders are made defendants; and the complainants seek to render liable to the satisfaction of their debts, certain bonds of the State which are held by the company, to have the road placed under the control of a receiver, and its profits applied to the liquidation of their debts, and to subject the stockholders to contribution, or the stock to sale.
It is alleged in the bills, that the road, gate and gate houses, have been conveyed to one B. Watkins, to save harmless certain sureties or endorsers of the company; and that the deed was made in favor of creditors, or that the debts secured thereby have been paid, or nearly so, by the receipts from the road. It is also alleged, that the company had State bonds to the amount of 5000 dollars in the hands of its officers, and that these bonds are choses in action, liable in equity to the payment of complainants’ debts.
The answer of the company denies that the deed to Watkins was made to hinder or delay other creditors; but that, having borrowed of the Bank of Tennessee a considerable sum of money for which personal security was given, this deed was made bonafide, to indemnify and save harmless the endorsers, and that but little., profits, have been realized, the expenses in the construction of a .bridge and keeping the road in repair, having been considerable.
*409 With regard to the State bonds, the answer states, that in the spring of 1841, there was an attempt made to get the company out of debt, by procuring additional subscriptions to stock, on the part of stockholders who were creditors, and which would entitle the company to an equal amount to. the individual subscription in Slate bonds. ■ The amount subscribed by individuals was twenty thousand dollars, and the company consequently obtained twenty thousand dollars in State bonds. Each stockholder was entitled to an amount in bonds equal to his subscription of stock; that is to say, if he subscribed $500, or any other given sum, he was entitled to that amount in a State bond, if the balance of his debt would amount to that much. They were not, however, to get the bonds under an order of the board, unless they would allow eighty cents in the dollar for them. “The company have gone on, arid paid fifteen thousand dollars. The condition upon which they subscribed to the stock was, that they should be entitled to these bonds.” The defendant therefore denies that these bonds are liable to the satisfaction of complainants’ debts.
The answer was replied to, and the causes were brought to a hearing without proof. His honor the Chancellor decreed that the deed to Watkins was void, and the road should be placed in the hands of a receiver; that the five thousand dollars of State bonds were liable to these creditors; and that the complainants, and all other creditors, who would file their claims, and contribute to the expenses of the suit, should be paid pro rata by the proceeds of the road; and as to the bonds, the question of priority was reserved.
The bills were dismissed as to the other defendants. The turnpike company alone appealed to this court.
Inasmuch as the individual stockholders are not before this court, no appeal having been taken from the decree dismissing the bill as to them, the questions now to be considered are, first, as to the validity of the deed of assignment; and, secondly, whether the $5000 of State bonds are liable to ifae ckáffl of the complainants.
1st, as to the validity of the deec
The charge in the bill attacks *410 fraud in its execution. This charge is specially denied in the answer, and there is no proof. But it is contended here now, that this deed is void:
1st. Because the corporation has no power to make a deed of assignment of its effects to secure creditors.
2d. Because the deed purports to have been executed in the name of the corporation, by S. R. Anderson, its president; and no power of attorney, under seal, is shown, authorizing him to make the deed.
3d. Because it does not appear that there was any vote of the board of directors, authorizing and empowering the president to affix the seal of the corporation to this deed.
1. As to the question, whether the corporation has power to make an assignment of its effects for the security or in payment of its creditors, there can be no doubt.
It is certainly true, that a corporation can exercise no powers that are not granted in the charter, or that are not incidental or necessary to carry into effect the purposes for which it was created. 2 Kent, 226, 1 ed. But these powers it may exercise as fully as a natural person can do.
At common law, it is an incident of a corporation to purchase and alien lands and chattels, to any extent, unless restrained by statute. 2 Kent, 227. But the charter of this corporation expressly confers the power to purchase “lands, goods and chattels to any extent necessary to carry into effect the objects of the incorporation,” and “the same to use, alien and dispose of at pleasure.” If the corporation may dispose of its property at pleasure by an absolute sale, certainly there can be no reason why it may not assign its property, or the profits of its business, to a trustee, for the payment of debts. That a corporation may make an assignment, see 6 Connecticut Rep. 238; 8 do. 505, 512; 6 Gill & John. 375; 4 do. 219. See also a late case, of Beckwith vs. The Windsor Manufacturing Company, 14 Connecticut Rep. 594, and the late cases of Dana vs. The Bank of the United States, decided by the Supreme Court of Pennsylvania, and the case exparte James S. Conway, decided by the Supreme Court of Arkansas.
*411 2. But if is said, the agent to execute the deed should have been authorized by a power of attorney under seal.
We cannot regard this objection as valid. The common law rule, with regard to natural persons, that an agent, to bind his principal by deed, must be empowered by deed himself, cannot, in the nature of things, be applied to corporations aggregate. These beings of mere legal existence, and their board, as such, are, literally speaking, incapable of a personal act. They direct or assent by vote; but their most immediate mode of action must be by agents. If the corporation or its representative, the board, can assent primarily by vote alone, to say that it could constitute an agent to make a deed only by deed, would be to say that it could constitute no such agent whatever; for after all, who could seal the power of attorney, but one empowered by vote? Angel and Ames on Corpo. sec. 7. The Supreme Court of Connecticut, in the case of Beckwith vs. Windsor Manufacturing Company, before referred to, (14 Conn. R. 603,) in answering this objection, say: “The corporation could only act in making the conveyance, by some agent or officer of theirs; and were it necessary for the vote to be executed with the same formality as the deed, a similar difficulty would arise in the execution of that.” From the necessity of the case, therefore, the common law rule, as applied to individuals, cannot exist in relation to corporations aggregate.
3. Objection is made, that no vote of the board appears in this record, authorizing the execution of this deed, or assenting to it.
It is laid down by Angel & Ames on Corporations, 115, that when the common seal of a corporation appears to be affixed to an instrument, the seal itself is prima facie evidence that it was affixed by proper authority; and the contrary must be shown by the objecting party.
In the case before us, the deed has the corporation seal affixed to it; and it is not even alleged in either of the bills, that it was placed there by the president without authority. On the contrary, the statement in each of the bills impliedly admits the regularity of the execution of the deed. They allege that the deed was executed; but they insist it was made in fraud of their rights.
*412 We think, therefore, on this part of the case, that the corporation had power to make this deed; that a power of attorney under seal to authorize the president to affix the corporation seal, was not necessary; that the existence of the seal of the corporation to the deed, is prima facie evidence that it was affixed by proper authority; and that it was made bona fide to secure the payment of a just debt; and consequently it is a valid conveyance, and cannot be set aside, in behalf of these creditors.
2d. We are next to consider the question as to the State bonds.
We think the 5000 dollar's of bonds which remain in the hands of the company undisposed of, belong to the company, and are choses in action liable to the satisfaction of complainants’ debts. That these bonds do not belong to the creditors, who had subscribed stock, is manifest from the facts stated in the answer of the defendant. The bonds had been obtained about a year before these bills were filed, and yet they had not been transferred to these creditors. Besides, the answer states that there was an order of the board, that the creditors who had thus subscribed for stock should be entitled to an equal amount in bonds, only on condition that they would allow eighty cents in the dollar., This proves that there was no contract creating an ownership, on the part of the creditors, of the bonds in question. They remained the property of the company, and it was understood that these subscribers for stock were to be preferred creditors, to be paid in the State bonds, provided they would receive them on the condition before mentioned. Until the creditors agreed to this condition and received their payment, the bonds remained the property of the company. As such, they are liable to these complainants’ debts. In the application of this fund, a question of priority arises between the complainants in these several bills. Hopkins, Hall and others filed their bill first, and obtained an attachment and injunction, to the amount of three thousand dollars of these bonds. The other bills were subsequently filed; and in these cases no other attachment issued.
The first bill, of Hopkins, Hall and others, filed under the act *413 of 1832, ch. 11, (Nich. & Car. 222,) gives them a priority of Hen, to the amount of the bonds by them attached; so that $3000 of these bonds must be sold for their benefit. See 2 Paige’s Ch. Rep. 567, Corning & Norton vs. White. The remaining two thousand dollars of bonds will be sold, and all the creditors in the two last bills filed will receive of the fund pro rata.
The decree must be reversed, and decree according to the foregoing principles.